UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Tyler Bielek, Vincent Lanese, Nataliya Loshak** and **Ariel Morales,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Lifebanc**, an Ohio Corporation<br><br>Defendant. | No.<br><br>Judge<br>Magistrate Judge<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs, Tyler Bielek, Vincent Lanese, Nataliya Loshak and Ariel Morales (hereafter "Plaintiffs"), individually and on behalf of all other persons similarly situated, sues the Defendant, Lifebanc Corporation (hereafter referred to as "Lifebanc" or "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;* Ohio Minimum Fair Wage Standards Act ("OMWFSA"), O.R.C. § 4111.01, *et seq*.; Ohio Prompt Pay Act, O.R.C. § 4113.15, O.R.C. § 2307.60 and Fed. R. Civ. P. 23 for Lifebanc's failure to pay Plaintiffs and other similarly-situated employees all earned overtime wages.

2. Plaintiffs and the Collective Members are current and former tissue recovery specialists who worked for Lifebanc in the United States at any point between the three years immediately preceding the filing of this lawsuit to the present

3. Plaintiffs and the Class Members are current and former tissue recovery specialists who worked for Lifebanc in Ohio at any point between the three years immediately preceding the filing of this lawsuit to the present

4. Under the FLSA and OMWFSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rates of pay for all time they spend working in excess of 40 hours in a given workweek. Lifebanc failed to pay Plaintiffs, the Collective Members and the Class Members one and one-half times their regular rates of pay for all time they spent working in excess of 40 hours in a given workweek. Plaintiffs therefore bring this Class Action and Collective action Complaint pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for Lifebanc's violations of federal and Ohio law as detailed further below.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the laws of the United States.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiffs, the Collective Members and the Class Members occurred within this District.

7. At all relevant times, Plaintiffs hve been a residents of Ohio and performed work for Lifebanc in this judicial district.

8. Lifebanc regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

9. Plaintiffs, the Collective Members and the Class Members in their work for Lifebanc were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

**PARTIES**

10. At all times material to the matters alleged in this Complaint, Plaintiffs were employees of Lifebanc.

11. Plaintiff Bielek was employed by Lifebanc as a tissue recovery specialist from approximately June 2016 through approximately June 2023.

12. Plaintiff Lanese is currently employed by Lifebanc as a tissue recovery specialist.

13. Plaintiff Loshak is currently employed by Lifebanc as a tissue recovery specialist.

14. Plaintiff Morales was employed by Lifebanc as a tissue recovery specialist from approximately August 2019 through approximately January 2024.

15. The Collective Members are all current and former tissue recovery specialists who for Lifebanc in the United States at any point in the three years preceding the filing of the original Complaint.

16. The Class Members are all current and former tissue recovery specialists who worked for Lifebanc in the state of Ohio at any point in the three years preceding the filing of the Complaint.

17. The Class and Collective Members are non-exempt from the OMFWSA and FLSA overtime requirements.

18. At all material times, Lifebanc was an Ohio Corporation licensed to transact business in the State of Ohio.

19. Under the OMFWSA and FLSA, Lifebanc is an employer. At all relevant times, Lifebanc had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Lifebanc. As a person who acted in the interest of Lifebanc in relation to the company's employees, Lifebanc is subject to liability under the OMFWSA and FLSA.

20. At all material times, Plaintiffs and the Class and Collective Members were employees of Lifebanc as defined by the OMFWSA and FLSA, 29 U.S.C. § 203(e)(1).

21. At all material times, Plaintiffs and the Class and Collective Members were non-exempt employees under 29 U.S.C. § 213(a)(1).

22. Plaintiff Bielek has given his written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached as "**Exhibit A**".

23. Plaintiff Lanese has given his written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached as "**Exhibit B**".

24. Plaintiff Loshak has given her written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached as "**Exhibit C**".

25. Plaintiff Morales has given his written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached as "**Exhibit D**".

## FACTUAL ALLEGATIONS

26. Lifebanc is a company specializing in organ and tissue extraction and transportation.

27. At all material times, Plaintiffs were non-exempt employees that were paid on an hourly basis.

28. At all material times, Plaintiffs worked in excess of forty (40) hours in a given workweek.

29. The Collective Members are all current and former tissue recovery specialists who worked in excess of forty (40) hours in any given workweek for Lifebanc in the United States at any point in the three years preceding the filing of this Complaint. The Collective Members are non-exempt from the FLSA's overtime requirements.

30. The Class Members are all current and former tissue recovery specialists who worked in excess of forty (40) hours for Lifebanc in any given workweek in Ohio at any point in the three years preceding the filing of this Complaint. The Class Members are non-exempt from the OMFWSA's overtime requirements.

31. At all material times, Plaintiffs, the Collective Members and the Class Members performed tissue extractions and tissue transportation for Lifebanc.

32. At all material times, Lifebanc scheduled Plaintiffs, the Collective Members and the Class Members in "block shifts."

33. For example, Plaintiffs, the Collective Members and the Class Members were routinely scheduled for three 16-hour block shifts in a given workweek, totally 48-hours.

34. At all material times, Plaintiffs, the Collective Members and the Class Members spent the entirety of their block shift either actively responding to Lifebanc's tissue recovery calls or were engaged to wait for Lifebanc's tissue recovery calls.

35. However, Lifebanc only paid Plaintiffs, the Collective Members and the Class Members for the time that they were actively responding to Lifebanc's tissue recovery calls and Lifebanc did not pay Plaintiffs, the Collective Members and the Class Members for any of their waiting time.

36. At all material times, Plaintiffs, the Collective Members and the Class Members were expected to respond to any Lifebanc tissue recovery call within five (5) minutes or less.

37. At all material times, Plaintiffs, the Collective Members and the Class Members were expected to be onsite for any tissue recovery within thirty (30) minutes of receiving a tissue recovery class.

38. In other words, when Plaintiffs, the Collective Members and the Class Members were working for Lifebanc in between calls, they were "off-the-clock" and were not paid for this compensable time.

39. As a result, Lifebanc failed to pay Plaintiffs, the Collective Members and the Class Members for several hours of overtime each workweek.

40. Plaintiffs, the Collective Members and the Class Members were also paid non-discretionary bonuses in their work for Lifebanc.

41. For example, Lifebanc offered Plaintiffs, the Collective Members and the Class Members supplemental compensation in exchange for picking up extra block shifts beyond their normally scheduled rates.

42. In these instances, Lifebanc offered Plaintiffs, the Collective Members and the Class Members a lump sum payment in advance in exchange for Plaintiffs', the Collective Members' and the Class Members' agreement to pick up an extra block shift.

43. However, Lifebanc failed to include these non-discretionary bonuses in Plaintiffs', the Collective Members', and the Class Members' regular rates of pay for the purpose of computing overtime.

44. As a result, in the instances when Plaintiffs, the Collective Members and the Class Members were paid for overtime work, Lifebanc paid them an illegally low overtime rate.

45. At all relevant times, Lifebanc failed to keep accurate time and pay records for Plaintiffs, the Collective Members and the Class Members as required by federal and Ohio law.

46. Substantial discrepancies exist between the amount of time that Plaintiffs, the Collective Members and the Class Members actually worked and the amount of time that Plaintiffs, the Collective Members and the Class Members were paid by Lifebanc.

47. As a result of Lifebanc's company-wide policies, Plaintiffs, the Collective Members and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

48. Lifebanc's method of paying Plaintiffs, the Collective Members and the Class Members in violation of federal and Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Lifebanc knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## COLLECTIVE ACTION ALLEGATIONS

49. Plaintiffs and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

50. Plaintiffs brings this action pursuant to 29 U.S.C. § 216(b) on their own behalf and as a representative of individuals similarly situated who are current or former tissue recovery specialists employed by Lifebanc.

51. Lifebanc subjected all of their non-exempt hourly employees, including Plaintiffs and the Collective Members, to their policy and practice of failing to pay for all hours worked and failing to pay proper overtime rates in violation of 29 U.S.C. § 207.

52. Plaintiffs' claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiffs are identical or substantially similar.

53. The Collective Members perform or have performed the same or similar work as Plaintiffs.

54. Lifebanc's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiffs or the Collective Members.

55. Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Lifebanc that caused harm to all of the Collective Members.

56. As such, Plaintiff brings these FLSA claims as a collective action on behalf of the following class:

> **All of Lifebanc's current and former tissue recovery specialists who worked in the United States at any time from three years preceding the filing of the Complaint to the present.**

57. Lifebanc's unlawful conduct, as described herein, is pursuant to their corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

58. Lifebanc is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members overtime as detailed herein.

59. Lifebanc's unlawful conduct has been widespread, repeated, and consistent.

60. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

61. Upon information and belief, the individuals similarly situated to Plaintiff includes hundreds of non-exempt employees currently and/or formerly employed by Lifebanc. Plaintiffs

are unable to state the precise number of similarly-situated employees because that information is solely in Lifebanc's possession, custody, or control, but it can be readily ascertained from their employment records.

62. Notice can be provided to the Collective Members by First Class Mail to the last address known to Lifebanc, via email at the last known email address known to Lifebanc, and by text message to the last known telephone number known to Lifebanc.

## OHIO RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

63. Plaintiffs reallege and incorporates by reference all allegations in all preceding paragraphs.

64. Plaintiffs brings Claims for Relief for violation of Ohio wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiffs bring these claims on behalf of themselves and all members of the following class comprised of:

> **All of Lifebanc's current and former tissue recovery specialists who worked in Ohio at any time from three years preceding the filing of the Complaint to the present.**

**Numerosity (Rule 23(a)(1)).**

65. The Class Members are so numerous that joinder of all members is impracticable. Plaintiffs on information and belief allege, that Lifebanc employed greater than one hundred people who satisfy the definition of the Class Members.

**a. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

66. Common questions of law and fact exist as to the Plaintiff and the Class Members including, but not limited to, the following:

a. Whether Lifebanc unlawfully failed to pay the Class Members all overtime wages in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA");

b. Whether Lifebanc unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

c. The damages sustained and the proper measure of restitution recoverable by members of the Class Members.

**b. Typicality (Rule 23(a)(3)).**

67. Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like the Class Members, were subjected to Lifebanc's illegal scheme to maximize profits by depriving their employees of overtime compensation.

**c. Adequacy (Rule 23(a)(4)).**

68. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

**d. Injunctive and Declaratory Relief (Rule 23(b)(2)).**

69. Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Lifebanc acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

**e. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

70. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Lifebanc's common and uniform policies and practices illegally deprived Plaintiffs and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to

resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Lifebancs practices.

71. Plaintiffs intend to send notice to all Class Members to the extent required by Rule 23.

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**AND IMPROPER OVERTIME RATE**
**(on behalf of Plaintiff and the Collective Members)**

72. Plaintiffs and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

73. In their work for Lifebanc, Plaintiffs and the Collective Members routinely worked in excess of forty hours in a given workweek.

74. During each and every workweek, Plaintiffs and the Collective Members were non-exempt from the FLSA's overtime requirements.

75. Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek.

76. The United States Supreme Court originally stated that employees subject to the FLSA must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & Railroad Co.* v. *Muscoda Local No. 123,* 321 U. S. 590 (1944). Subsequently, the Court ruled that there need be no exertion at all, and that all hours are hours worked in which the employee is required to give his employer–that "an employer,

if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." (*Armour & Co.* v. *Wantock,* 323 U.S. 126 (1944); *Skidmore* v. *Swift,* 323 U.S. 134 (1944).

77. The Supreme Court has elaborated that "no principle of law ... precludes waiting time from also being working time," and that an employee who is "engaged to wait" must be compensated, even though an employee "wait[ing] to be engaged" need not. *Skidmore v. Swift & Co*., 323 U.S. 134, 136–37 (1944). Time spent waiting for work is compensable if it is spent "primarily for the benefit of the employer and [its] business." *Armour*, 323 U.S. at 132–34.

78. Under the PPA, when periods of inactivity are "unpredictable" and "usually of short duration," and the employee "is unable to use the time effectively for his own purposes," then the employee is "engaged to wait," and the inactive time constitutes "work" time under FLSA—even if "the employee is allowed to leave the premises or the job site during such periods of inactivity." 29 C.F.R. § 785.15. Furthermore, the FLSA "does not exclude as working time periods contracted for and spent on duty ... merely because the nature of the duty left time hanging heavy on the employees' hands and because the employer and employee cooperated in trying to make the confinement and idleness incident to it more tolerable." *Armour*, 323 U.S. at 134. Additional guidance is found in 29 C.F.R. § 785.15 which illustrates such examples of compensable waiting time:

> A stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are all working during their periods of

> inactivity. The rule also applies to employees who work away from the plant. For example, a repair man is working while he waits for his employer's customer to get the premises in readiness. The time is worktime even though the employee is allowed to leave the premises or the job site during such periods of inactivity. The periods during which these occur are unpredictable. They are usually of short duration. In either event the employee is unable to use the time effectively for his own purposes. It belongs to and is controlled by the employer. In all of these cases waiting is an integral part of the job. The employee is engaged to wait. (See: *Skidmore v. Swift*, 323 U.S. 134, 137 (1944); *Wright v. Carrigg,* 275 F. 2d 448, 14 W.H. Cases (C.A. 4, 1960); *Mitchell v. Wigger,* 39 Labor Cases, para. 66,278, 14 W.H. Cases 534 (D.N.M. 1960); *Mitchell v. Nicholson*, 179 F. Supp, 292,14 W.H. Cases 487 (W.D.N.C. 1959)).

79. The FLSA requires an employer to keep records that include certain identifying information about the employee and data about the hours worked and the wages earned. The law requires this information to be accurate. The following is a listing of the basic records that an employer must maintain: (1) employee's full name and social security number; (2) address, including zip code; (3) birth date, if younger than 19; (4) sex and occupation; (5) time and day of week when employee's workweek begins; (6) hours worked each day; (7) total hours worked each workweek; (8) basis on which employee's wages are paid (e.g., "$9 per hour", "$440 a week", "piecework"); (9) regular hourly pay rate; (10) total daily or weekly straight-time earnings; (11) total overtime earnings for the workweek; (12) all additions to or deductions from the employee's wages; (13) total wages paid each pay period; and (14) date of payment and the pay period covered by the payment. FLSA Factsheet #21.

80. "While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities . . . ." *See e.g., United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 491 (2d Cir. 1960).

81. The Supreme Court explained that the Act's liquidated damages provision: constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency

and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 89 L. Ed. 1296, 65 S. Ct. 895 (1945) (footnote omitted).

82. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. *See* 29 C.F.R. 778.105.

83. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made. *See* 29 C.F.R. § 778.106.

84. Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

85. At all material times, Lifebanc scheduled Plaintiffs and the Collective Members in "block shifts."

86. For example, Plaintiffs and the Collective Members were routinely scheduled for three 16-hour block shifts in a given workweek, totalling 48-hours.

87. At all material times, Plaintiffs and the Collective Members spent the entirety of their block shift either actively responding to Lifebanc's tissue recovery calls or were engaged to wait for Lifebanc's tissue recovery calls.

88. However, Lifebanc only paid Plaintiffs and the Collective Members for the time that they were actively responding to Lifebanc's tissue recovery calls and Lifebanc did not pay Plaintiffs and the Collective Members for any of their waiting time.

89. At all material times, Plaintiffs and the Collective Members were expected to respond to any Lifebanc tissue recovery call within five (5) minutes or less.

90. At all material times, Plaintiffs and the Collective Members were expected to be onsite for any tissue recovery within thirty (30) minutes of receiving a tissue recovery class.

91. In other words, when Plaintiffs and the Collective Members were working for Lifebanc in between calls, they were "off-the-clock" and were not paid for this compensable time.

92. These periods of time between calls were unpredictable and of short duration.

93. Plaintiffs and the Collective Members were not completely relieved of their job duties during this time spent between calls.

94. As a result, Lifebanc failed to pay Plaintiffs and the Collective Members for several hours of overtime each workweek.

95. Plaintiffs and the Collective Members were also paid non-discretionary bonuses in their work for Lifebanc.

96. For example, Lifebanc offered Plaintiffs and the Collective Members supplemental compensation in exchange for picking up extra block shifts beyond their normally scheduled rates.

97. In these instances, Lifebanc offered Plaintiffs and the Collective Members a lump sum payment in advance in exchange for Plaintiffs' and the Collective Members' agreement to pick up an extra block shift.

98. However, Lifebanc failed to include these non-discretionary bonuses in Plaintiffs' and the Collective Members' regular rates of pay for the purpose of computing overtime.

99. As a result, in the instances when Plaintiffs and the Collective Members were paid for overtime work, Lifebanc paid them an illegally low overtime rate.

100. At all relevant times, Lifebanc failed to keep accurate time and pay records for Plaintiff and the Collective Members as required by federal law.

101. Substantial discrepancies exist between the amount of time that Plaintiffs and the Collective Members actually worked and the amount of time that Plaintiffs and the Collective Members were paid by Lifebanc.

102. As a result of Lifebanc's company-wide policies, Plaintiffs and the Collective Members were not paid for all time worked each workweek and are owed significant unpaid wages.

103. Lifebanc's method of paying Plaintiff and the Collective Members in violation of federal law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Lifebanc knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

104. As a result of Lifebanc's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, Lifebanc violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT TWO: OHIO MINIMUM FAIR WAGE STANDARDS ACT**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**AND IMPROPER OVERTIME RATE**
**(on behalf of Plaintiff and the Class Members who elect to opt-in)**

105. Plaintiffs and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

106. "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)).

107. In their work for Lifebanc, Plaintiffs and the Class Members routinely worked in excess of forty hours in a given workweek.

108. During each and every workweek, Plaintiffs and the Class Members were non-exempt from Ohio's overtime requirements.

109. At all material times, Lifebanc scheduled Plaintiffs and the Class Members in "block shifts."

110. For example, Plaintiffs and the Class Members were routinely scheduled for three 16-hour block shifts in a given workweek, totalling 48-hours.

111. At all material times, Plaintiffs and the Class Members spent the entirety of their block shift either actively responding to Lifebanc's tissue recovery calls or were engaged to wait for Lifebanc's tissue recovery calls.

112. However, Lifebanc only paid Plaintiffs and the Class Members for the time that they were actively responding to Lifebanc's tissue recovery calls and Lifebanc did not pay Plaintiffs and the Class Members for any of their waiting time.

113. At all material times, Plaintiffs and the Class Members were expected to respond to any Lifebanc tissue recovery call within five (5) minutes or less.

114. At all material times, Plaintiffs and the Class Members were expected to be onsite for any tissue recovery within thirty (30) minutes of receiving a tissue recovery class.

115. In other words, when Plaintiffs and the Class Members were working for Lifebanc in between calls, they were "off-the-clock" and were not paid for this compensable time.

116. These periods of time between calls were unpredictable and of short duration.

117. Plaintiffs and the Class Members were not completely relieved of their job duties during this time spent between calls.

118. As a result, Lifebanc failed to pay Plaintiffs and the Class Members for several hours of overtime each workweek.

119. Plaintiffs and the Class Members were also paid non-discretionary bonuses in their work for Lifebanc.

120. For example, Lifebanc offered Plaintiffs and the Class Members supplemental compensation in exchange for picking up extra block shifts beyond their normally scheduled rates.

121. In these instances, Lifebanc offered Plaintiffs and the Collective Members a lump sum payment in advance in exchange for Plaintiffs' and the Class Members' agreement to pick up an extra block shift.

122. However, Lifebanc failed to include these non-discretionary bonuses in Plaintiffs' and the Class Members' regular rates of pay for the purpose of computing overtime.

123. As a result, in the instances when Plaintiffs and the Class Members were paid for overtime work, Lifebanc paid them an illegally low overtime rate.

124. Substantial discrepancies exist between the amount of time that Plaintiffs and the Class Members actually worked and the amount of time that Plaintiff and the Class Members were paid by Lifebanc.

125. As a result of Lifebanc's company-wide policies, Plaintiffs and the Class Members were not paid for all time worked each workweek and are owed significant unpaid wages.

126. Lifebanc's method of paying Plaintiffs and the Class Members in violation of Ohio law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Lifebanc knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

127. As a result of Lifebanc's failure or refusal to pay Plaintiff and the Class Members for all hours worked in excess of forty (40) hours in any given workweek, Plaintiff and the Class Members are entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus treble damages, together with interest, reasonable attorney's fees, and costs.

**COUNT THREE: OHIO PROMPT PAY ACT**
**(on behalf of Plaintiff and the Class Members who decline to opt-out)**

128. Plaintiffs and the Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

129. During all relevant times, Lifeanc was covered by O.R.C. § 4113.15, and Plaintiff and the Class Members were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

130. O.R.C. § 4113.15(A) requires that Lifebanc pay Plaintiffs and the Class Members all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

131. Section 4111.10(C) specifically states that it applies to employees seeking to "join as a party plaintiff in any civil action that is brought under this section." "Because § 4111.10(C) states it applies only to 'this section,' i.e., civil actions brought under the OMFWSA, it does not apply to Ohio's Prompt Pay Act." *Oglesby v. FedEx Ground Package Systems, Inc.*, Case No. 3:20-cv-00346 at Doc. #78, pp. 11-12 (S.D. Ohio, March 23, 2023).

132. By failing to pay Plaintiffs and the Class Members all wages due to them under the FLSA, Lifebanc has also violated the Ohio Prompt Pay Act.

133. Plaintiffs' and the Class Members' unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

134. In violating Ohio law, Lifebanc acted willfully, without a good faith basis and with reckless disregard to Ohio law.

135. As a result of Lifebanc's willful violation, Plaintiffs and Class Members are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, request that this Court grant the following relief in Plaintiffs', the Collective Members' and the Class Members' favor, and against Lifebanc Corporation:

A. For the Court to declare and find that Lifebanc committed one or more of the following acts:

i. violated the overtime provisions of the FLSA;

ii. willfully violated the wage and overtime provisions of the FLSA;

iii. violated the minimum wage and overtime provisions of the OMFWSA;

iv. willfully violated the minimum wage and overtime provisions of the OMFWSA;

v. willfully violated the Ohio Prompt Pay Act; and

B. For the Court to award damages in the amounts of all unpaid overtime wages and back pay due and owing to Plaintiffs, the Collective Members and the Class Members;

C. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest on any damages awarded;

E. For the Court to award all treble damages, interest attorney fees and costs owed to Plaintiffs and the Class Members;

F. For the Court to award Plaintiffs' and the Class and Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

G. For the Court to provide a reasonable incentive award for Plaintiffs to compensate them for the time she spent attempting to recover wages for the Class and Collective Members and for the risks they took in doing so; and

H. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, the Collective Members and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED: March 2, 2026

Respectfully submitted,

By: /s/ *James L. Simon*
James L. Simon (OH#0089483)
SIMON LAW CO.
11 ½ N. Franklin Street
Chagrin Falls, Ohio
Telephone: (216) 816-8696
Email: james@simonsayspay.com